■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WINSTON RIDDICK, JR., Appellant. [667 NYS2d 810] —Crew III, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered February 8, 1996, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), robbery in the first degree (two counts) and burglary in the second degree (two counts).

In January 1995, Kevin Wilson and defendant collaborated on a means of burglarizing a business known as "Mr. Bagel" located in the Town of Ulster, Ulster County. Wilson, a former employee of the store, knew where the cash was kept after closing and was aware of how the security system worked. It was agreed that the two would go to the store around closing time on January 17, 1995 and Wilson would go into the store and assist the employees with closing. While doing so, Wilson was to distract the employees so that defendant, who would be waiting outside, would be able to sneak into the store's bathroom, which was situated very close to the entrance. Defendant then was to steal the cash and split the proceeds with Wilson.

Defendant and Wilson proceeded according to plan but, after Wilson and the employees locked up, Feliks Marasinski, the night baker, entered the bathroom and discovered defendant. Defendant struck Marasinski twice in the head with a fire extinguisher, took the store money and fled. When defendant

arrived home, he described the events to Wilson, who returned to the store to break a window to indicate forced entry because defendant, in his haste, had forgotten to do so.

Marasinski ultimately died as a result of the blows inflicted by defendant and, as a consequence, defendant was indicted and charged with two counts of murder in the second degree, two counts of robbery in the first degree and two counts of burglary in the second degree. Following a jury trial, at which Wilson testified on behalf of the People, defendant was convicted as charged and sentenced to, *inter alia*, an indeterminate term of imprisonment of 25 years to life. Defendant now appeals.

Defendant's primary contention on appeal is that the evidence was legally insufficient to support his convictions because there was inadequate corroboration of Wilson's trial testimony. We disagree. While we recognize that accomplice testimony is to be regarded with the utmost caution (*see, People v Moses*, 63 NY2d 299, 305), thereby requiring corroboration of such testimony (*see*, CPL 60.22 [1]), the corroborative evidence need not be directly probative of the ultimate facts necessary to establish the elements of the crime charged. Indeed, "much less evidence and of a distinctly inferior quality is sufficient to meet the slim corroborative linkage to otherwise independently probative evidence from [an] accomplice[ ]" (*People v Breland*, 83 NY2d 286, 294).

Our review of the record satisfies us that the corroborative evidence adduced here meets the minimal requirements of CPL 60.22. First, there was evidence offered by several store customers, who were leaving the premises at closing time, of a black male loitering at the entrance wearing clothing fitting the description provided by Wilson. Although unable to make a positive identification, one of these witnesses testified at trial that defendant looked like the person he had seen loitering at the doorway on the night in question. Such equivocal identification has been held to be sufficient corroboration of accomplice testimony (*see, People v Jones*, 85 NY2d 823, 825). Further, defendant's girlfriend placed defendant in the presence of Wilson shortly after the commission of the crime, which also has been held to be legally sufficient corroboration (*see, People v Van Skiver*, 111 AD2d 1032, 1034). Additionally, there was testimony that defendant, on the evening of the crime, asked his girlfriend to lie about his whereabouts and to tell anyone who asked that he was home playing chess with Wilson throughout the evening. It has been held that false alibi evidence, representing consciousness of guilt, while insufficient

alone to constitute corroborative evidence, may corroborate the testimony of an accomplice where there is other evidence in the case tending to connect the defendant with the crime (*see, People v Moses*, 63 NY2d 299, 308, *supra*). Finally, there was testimony from a former girlfriend that defendant, then unemployed, arrived at her apartment a day or two after the robbery with a brown paper bag containing a large quantity of currency, which he placed on a shelf in her bedroom. That witness further testified that when she asked defendant where the money had come from, he answered, "Never mind." In our view, the sum total of the corroborative evidence "so harmonize[s] with [Wilson's] narrative as to have a tendency to furnish the necessary connection between defendant and the crime" (*People v Dixon*, 231 NY 111, 117).

Next, defendant contends that County Court erred by permitting the People to impeach his girlfriend, Ann Sapp, in accordance with the provisions of CPL 60.35 (1). Again, we disagree. At trial, the People called Sapp as a witness and established that Wilson and defendant were together at her apartment on the evening of January 17, 1995. Sapp further testified that defendant had asked her to lie in the event anyone questioned her as to the events of that evening. However, she insisted that defendant had asked her to lie for Wilson, telling anyone who inquired that Wilson had been in the apartment all evening playing chess with defendant.

County Court permitted the People to utilize a transcript of Sapp's prior Grand Jury testimony, wherein she had testified that defendant had asked her to lie for him by telling anyone who asked that defendant had been in the apartment all evening playing chess with Wilson, and instructed the jury that such prior testimony could not be considered for the truth of the facts therein but could be utilized by the jury only in determining the credibility of Sapp's trial testimony. We view the court's ruling, as well as its limiting instructions, to have been appropriate. Inasmuch as corroboration of Wilson's testimony went to the heart of the prosecution's case, the discrepancy in Sapp's trial testimony with that of her Grand Jury testimony was highly material, and her trial testimony tended to disprove the People's position at trial (*cf., People v Knight*, 80 NY2d 845). Armed with Sapp's prior sworn testimony, the jury could have appropriately concluded that defendant had requested Sapp to lie but that she was being untruthful at trial concerning for whom she was to lie. That being the case, the jury was at liberty to infer that she had been asked to lie for the benefit of defendant. We have considered defendant's

remaining contentions and find them all to be equally without merit.

Mikoll, J. P., Mercure, White and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.