■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO HEARD, Appellant. [938 NYS2d 672]—

Lahtinen, J.

Defendant and four codefendants were indicted in May 2009 for various crimes, including conspiracy in the fourth degree, arising from their alleged conduct in possessing and selling cocaine in Albany County. The indictment followed a joint investigation by the Albany Police Department and the Attorney General's Statewide Organized Crime Task Force. The investigation relied heavily upon monitoring phone calls pursuant to eavesdropping warrants and, during the course of the investigation, defendant was identified as an alleged supplier of cocaine to other codefendants for eventual street level sales.

In November 2008, police had begun to monitor the calls of codefendants Steven Fletcher (hereinafter Fletcher) and his brother, Lance Fletcher. By February 2009, police secured an additional eavesdropping warrant to tap the phone of Fletcher's wife, codefendant Ebony Jones, who supplied codefendant Linda Ross with cocaine. On February 28, 2009, police monitored a phone call that Jones had with a supplier. An officer familiar with defendant claimed to recognize defendant's voice as the supplier in the call. Police continued audio and physical surveillance, including monitoring calls between defendant and Jones regarding cocaine transactions and observing defendant meeting Jones at locations discussed in the calls. On March 24, 2009, police executed search warrants at Fletcher and Jones' apartment, where they seized cocaine and over $12,000 in cash, and at Ross' apartment, where cocaine was seized.

Defendant was arrested in May 2009 and eventually went to trial on charges of one count each of conspiracy in the fourth degree and criminal sale of a controlled substance in the second degree, and two counts of criminal possession of a controlled substance in the third degree. A jury found him guilty of all four counts. He was sentenced, as a predicate felon, to an aggregate 12-year prison term with five years of postrelease supervision. Defendant appeals.

We consider first defendant's argument that the verdict was against the weight of the evidence. Defendant asserts that the weight of the evidence established neither that it was his voice in the pertinent recorded calls with Jones nor that he was the person observed meeting Jones. He further asserts that the weight of the evidence did not support the determination that he was involved in the March 20, 2009 sale, upon which the sale and possession convictions rested. Since a different determination by the jury would have been reasonable, the first step in weight of the evidence analysis is satisfied (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). In the second step, we, like the factfinder at trial, "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (*People v Danielson*, 9 NY3d 342, 348 [2007]). When exercising this factual review, we accord great deference to the jury's " 'opportunity to view the witnesses, hear the testimony and observe demeanor' " (*People v Romero*, 7 NY3d 633, 644 [2006], quoting *People v Bleakley*, 69 NY2d at 495).

The People's proof included, among other things, 68 wiretapped phone conversations, testimony of police officers involved in the investigation, and surveillance photographs taken of defendant at one of the purported meetings between defendant and Jones. Early in the investigation, police believed that Fletcher was procuring cocaine from a supplier in New York City. When the wiretap was extended to Jones' phone, Investigator Dennis Guiry heard Jones talking to and planning to meet a supplier on February 28, 2009. Guiry attempted to follow Jones as she went to meet the supplier, but lost her car. Detective Scott Gavigan, who knew defendant, listened to a recording of the conversation and claimed that he recognized defendant's voice as the other caller. Thereafter, the same caller spoke with Jones on many occasions regarding cocaine transactions, and several times during March 2009 police watched as defendant arrived at meetings that he had arranged with Jones during those conversations.

With respect to the March 20, 2009 transaction, the person

identified by police as defendant agreed in a monitored phone conversation to sell Jones 1½ ounces of cocaine for $1,850. Defendant was observed leaving his residence, he proceeded to the described meeting place, he exited his car and entered Jones' car, and he stayed there very briefly. A phone call later that evening occurred in which defendant indicated to Jones that the cocaine was suitable for cooking into crack. This conversation, as well as most others between Jones and defendant, were often couched in street language, the meaning of which was explained by police with expertise regarding language used to disguise drug transactions.

There were numerous credibility issues for the jury to consider. It had to consider the believability of the explanations and, in essence, translations provided by police of the recorded transactions that were couched in street language. Gavigan's ability to recognize defendant's voice when listening to a recording of the February 28, 2009 conversation was vigorously challenged by defendant. Defendant also challenged and offered proof contesting the testimony of officers who visually identified defendant at key meetings with Jones. We see no reason to reject these or the other credibility determinations made by the jury. According deference to those determinations, and after weighing the evidence in the record in a neutral light along with considering the reasonable inferences that can be drawn therefrom, we are not persuaded that the verdict was against the weight of the evidence.

Defendant contends that he was prejudiced by the use at trial of call transcripts that identified him by name as a caller to Jones. The transcripts, which were viewed by the jury when the actual calls were played, were stipulated by the parties as a demonstrative aid, they were not admitted into evidence, and County Court gave cautionary instructions regarding the transcripts. Defendant did not object to the use of these transcripts at trial and we decline to exercise our interest of justice jurisdiction regarding this issue (see People v Westcott, 84 AD3d 1510, 1513 [2011]; People v Smith, 83 AD3d 1213, 1213-1214 [2011]).

We turn next to defendant's arguments that the wiretapped recordings were received into evidence without being properly authenticated and in violation of his 6th Amendment right to confrontation. Although defendant raised an authenticity issue in a pretrial motion and preserved it at trial, that challenge was based on the absence of Jones as a witness rather than, as now asserted, the insufficiency of Guiry's testimony in meeting the foundation requirements articulated in People v Ely (68 NY2d

520, 527 [1986]). Had the specific issue been raised at trial, it could have been addressed and, if necessary, further relevant testimony elicited from Guiry. The issue is not properly preserved (see *People v Smith*, 37 AD3d 333, 335 [2007], *lv denied* 8 NY3d 950 [2007]; *People v Richardson*, 193 AD2d 969, 972 [1993], *lv denied* 82 NY2d 725 [1993]). In any event, reversible error did not occur since Guiry, who monitored live calls, testified that he listened to all calls intercepted on the eavesdropping system, he stated that those calls could not be altered and were sealed once recorded, he listened to calls on the recording admitted into evidence, and those calls were in the exact condition as the ones on the original system (see *People v Jackson*, 43 AD3d 488, 490 [2007], *lv denied* 9 NY3d 962 [2007]).

The admission into evidence of recordings of the phone conversations between defendant and Jones did not violate defendant's 6th Amendment right to confront a witness. The Confrontation Clause is implicated when the People attempt to use testimonial evidence of a witness not appearing at trial (see *Crawford v Washington*, 541 US 36, 53-54 [2004]; *People v Duhs*, 16 NY3d 405, 408 [2011]). The statements by Jones during phone conversations that she did not know were being recorded while she negotiated cocaine transactions with defendant were not testimonial in nature (see *People v Marshall*, 65 AD3d 710, 712 [2009], *lv denied* 13 NY3d 940 [2010]; *see generally People v Rawlins*, 10 NY3d 136, 148 [2008], *cert denied sub nom. Meekins v N.Y.*, 557 US —, 129 S Ct 2856 [2009]). Further, "the statements were not hearsay because they were part of the criminal res gestae" (*People v Marshall*, 65 AD3d at 712).

Comments in the prosecutor's opening statement regarding officers' previous knowledge of defendant and proof allegedly suggestive of defendant's prior involvement with the police did not deprive him of a fair trial. Identity was a key issue at trial and the People relied upon voice and visual identification of defendant by officers who knew him. Moreover, County Court instructed the jury after the People's opening statement, during trial and at the close of the case that nothing negative was to be drawn from police previously knowing defendant, that police knowledge of defendant in no way constituted proof of any criminal history, and that such proof was to be considered only for the purpose of whether the officers could identify defendant. We are unpersuaded that prejudicial error resulted from the prosecutor's comments or the police testimony (see *People v Jordan*, 81 AD3d 528, 529 [2011], *lv denied* 16 NY3d 860 [2011]).

Defendant contends that his due process right to a fair trial

was violated by admitting evidence of phone conversations that occurred prior to February 28, 2009 as well as evidence obtained from the search of the codefendants' residences. Although defendant objected to this evidence at trial, he did not do so on the grounds asserted on appeal. Accordingly, the issue has not been properly preserved (*see People v Grady*, 40 AD3d 1368, 1373 [2007], *lv denied* 9 NY3d 923 [2007]) and, in any event, it is without merit. We have considered and find unavailing defendant's remaining arguments, including that the People constructively amended the indictment and that County Court erred in denying defendant's request for a missing witness charge regarding Jones.

Peters, J.P., Rose, Kavanagh and Garry, JJ., concur. Ordered that the judgment is affirmed.