■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAUDE ANDERSON, Appellant. [981 NYS2d 200]—

Garry, J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered March 21, 2012, upon a verdict convicting defendant of the crimes of assault in the second degree (two counts), aggravated criminal contempt, criminal contempt in the first degree (two counts) and menacing in the second degree.

In August 2010, defendant visited his paramour, Kimmarie Stokes, in an apartment in the City of Schenectady, Schenectady County where Stokes resided with her roommates, Melvin Moore and Marion Little. Little stepped outside the apartment, and shortly thereafter an altercation occurred, resulting in both Moore and Stokes being struck in the head with a baseball bat. Little saw defendant run out of the residence, followed by Stokes, who was bleeding from the head. Stokes told Little that Moore had also been injured. Upon entering the apartment, Little found Moore unconscious and called 911. Defendant was no longer at the scene when police arrived, but he later identified himself to law enforcement officers and was arrested.

Defendant was indicted for various offenses, including contempt charges arising from an order of protection already in effect that required him to refrain from illegal contact with Stokes. A new order of protection was issued that prohibited defendant from all direct or indirect contact with Stokes. Thereafter, defendant contacted Stokes by telephone from jail, resulting in a second indictment and a new contempt charge. Following a consolidated jury trial, he was convicted of assault in the second

degree (two counts), aggravated criminal contempt, criminal contempt in the first degree (two counts) and menacing in the second degree, and was sentenced to an aggregate prison term of 3²/₃ to 7 years. Defendant appeals.

Defendant first contends that his constitutional right to a speedy trial was violated by the 17-month delay between his August 2010 arrest and the January 2012 trial.[1] Whether a constitutional violation has occurred depends upon such factors as whether there was a lengthy period of pretrial incarceration, the nature of the charges, the extent of and reasons for the delay, and any resulting prejudice (see People v Taranovich, 37 NY2d 442, 445 [1975]; People v Swan, 90 AD3d 1146, 1147 [2011]). Here, defendant was incarcerated throughout the period between his arrest and the trial. While this factor weighs in his favor, the others do not. The initial delay was caused by a conflict in defendant's legal representation that was discovered after the People declared readiness for trial in October 2010; attempts to assign substitute counsel were frustrated by additional conflicts thereafter, resulting in several adjournments. These efforts were still underway in April 2011 when the second indictment was filed, charging defendant with violating the order of protection that had been imposed due to the crimes charged in the first indictment. Substitute counsel was appointed within a few days thereafter, defendant was arraigned on the second indictment and the People again declared readiness. Less than two months later, Stokes died from causes unrelated to defendant's actions.

Defendant contends that he was prejudiced by Stokes' death, claiming that she would have testified that he struck her accidentally. However, even assuming that she would have so testified, nothing in the record suggests that a trial could possibly have been scheduled in the brief period between the second indictment and her death. Thus, defendant failed to demonstrate a relationship between the trial date and any resulting disadvantage. As the delay was partially caused by defendant's actions and the charges against him were serious, we find no constitutional violation (see People v Irvis, 90 AD3d 1302, 1303-1304 [2011], lv denied 19 NY3d 962 [2012]; People v Morris, 25 AD3d 915, 916-917 [2006], lv denied 6 NY3d 851 [2006]; People v Alger, 23 AD3d 706, 706-707 [2005], lv denied 6 NY3d 845 [2006]).

Defendant's right to confront witnesses pursuant to Crawford v Washington (541 US 36 [2004]) was not violated when County

---

1. Defendant does not claim that any statutory speedy trial violation occurred (see CPL 30.30 [1] [a]).

Court allowed a police officer who responded to the 911 call to testify about statements made by Stokes, and then permitted the People to play a police video depicting the officer's encounter with Stokes. The officer testified that Stokes said that she had been hit in the head with a bat, described her assailant, and said that he was in a nearby community center. The officer further testified that police then began looking for defendant. The video reveals that the officer encountered Stokes immediately upon arriving at the scene. She was bleeding profusely from her head and complaining of dizziness. The officer asked Stokes about her assailant's location, description and name, where the attack had occurred, and whether there were other victims, promptly relaying her answers to other police officers and emergency medical personnel who were dispatched to locate and assist Moore and pursue defendant. After the first few minutes, the officer asked no further questions about the incident, concentrating instead on attempting to calm Stokes as she became increasingly agitated and apprehensive about, among other things, the fact that defendant had not been found.[2]

County Court correctly determined that the statements by Stokes were admissible as excited utterances (*see People v Caviness*, 38 NY2d 227, 230-231 [1975]; *People v Rogers*, 94 AD3d 1246, 1248-1249 [2012], *lv denied* 19 NY3d 977 [2012]). Further, we find no constitutional violation. The video reveals that the officer's primary purpose in questioning Stokes was "to enable the police to meet an ongoing emergency and apprehend the perpetrator, not to provide evidence for later prosecution," and *Crawford* does not preclude such nontestimonial statements (*People v Shaver*, 86 AD3d 800, 802 [2011], *lv denied* 18 NY3d 962 [2012]; *see Davis v Washington*, 547 US 813, 822 [2006]; *People v Bradley*, 8 NY3d 124, 127-128 [2006]; *People v Kenyon*, 108 AD3d 933, 937 [2013], *lv denied* 21 NY3d 1075 [2013]; *People v Hines*, 39 AD3d 968, 970 [2007], *lv denied* 9 NY3d 876 [2007]).

We are unpersuaded by defendant's contention that County Court erred in its *Molineux/Sandoval* ruling admitting evidence of defendant's January 2010 conviction for assault in the third degree and a 2008 temporary order of protection in favor of Stokes. Given defendant's claim that he struck Stokes accidentally with the bat—as well as his tearful trial testimony that "I never did anything like that before I had a fight with anybody . . . I never could do that"—the evidence was admissible to show the absence of mistake or accident (*see People v Henson*, 33 NY2d 63, 72 [1973]; *People v Wright*, 81 AD3d 1161,

---

2. Authorities at the community center where Stokes said that defendant had gone apparently refused to permit police officers to enter in search of him.

1162 [2011], *lv denied* 17 NY3d 803 [2011]; *People v Barreto*, 64 AD3d 1046, 1049 [2009], *lv denied* 13 NY3d 834 [2009]). The court properly balanced the need for the evidence and its probative value against any potential delay, prejudice or surprise, and gave appropriate limiting instructions (*see People v Johnson*, 106 AD3d 1272, 1274 [2013], *lv denied* 21 NY3d 1043 [2013]; *People v Wilkinson*, 71 AD3d 249, 254 [2010]).

As part of its *Molineux* ruling, County Court also permitted the People to establish that defendant had been convicted in 2009 of criminal contempt in the second degree for violating the 2008 temporary order of protection. On appeal, defendant does not directly challenge this aspect of the *Molineux* ruling. Instead, he argues that County Court improperly deprived him of the opportunity to admit this conviction—which also formed the basis for raising the contempt charge in the second indictment from a class A misdemeanor to a class E felony—outside the presence of the jury (*see* CPL 200.60 [3]; Penal Law §§ 215.50, 215.51 [c]). In this regard, County Court reasoned that, as the jury would learn of the conviction pursuant to the *Molineux* ruling, allowing defendant to admit it outside the presence of the jury would serve no purpose. The argument is unpreserved for appellate review, as defense counsel consented to this determination (*see People v Westcott*, 84 AD3d 1510, 1513 [2011]). In any event, we would have found no error, as the purpose of the statutory procedure—to protect defendants from potential prejudice—is not implicated where, as here, the jury learns of the prior conviction pursuant to a separate determination that any such prejudice is outweighed by the conviction's probative value (*compare People v Anderson*, 89 AD3d 1161, 1162-1163 [2011]).

Defendant next contends that County Court erred in denying his application to admit three written statements in which Stokes repudiated previous allegations that defendant struck her intentionally. While we disagree with defendant's claim that the notarization of these extrajudicial statements—apparently prepared at defendant's instigation—provided sufficient "indicia of reliability" to require their admission for due process reasons (*People v Robinson*, 89 NY2d 648, 657 [1997]; *compare People v Richard*, 30 AD3d 750, 754 [2006], *lv denied* 7 NY3d 869 [2006]), there is merit to his argument that, since the People were permitted to introduce evidence of the statements that Stokes made to police, he should have been permitted to use the letters to impeach her credibility. Hearsay declarants may generally be impeached by the same methods that would have been available had they testified at trial, and the prior inconsistent

statement of an unavailable declarant may be used for this purpose without establishing the usual foundation where, as here, there was no prior opportunity for cross-examination (*see People v Canady*, 186 AD2d 749, 749-750 [1992], *lv denied* 81 NY2d 786 [1993]; *People v Conde*, 16 AD2d 327, 331 [1962]; Jerome Prince, Richardson on Evidence § 8-111 [Farrell 11th ed]). Nevertheless, upon review of the record as a whole—including defendant's multiple inconsistent explanations of events, the inconsistency of the physical evidence with his claim of accident, and the evidence of his longstanding tumultuous relationship with Stokes—we find that there was overwhelming evidence of defendant's guilt and no significant probability that he would have been acquitted if the letters had been admitted. Accordingly, this error was harmless (*see People v Arafet*, 13 NY3d 460, 468 [2009]; *People v Rivera*, 70 AD3d 1177, 1181-1182 [2010], *lv denied* 14 NY3d 891 [2010], 15 NY3d 855 [2010]).

Contrary to defendant's claim, County Court properly refused his request to give the jury a justification charge with respect to the crimes against Stokes. Defendant did not testify that he struck Stokes in self-defense, but instead stated that he did so accidentally while defending himself against Moore. He testified unequivocally that he did not argue or fight with Stokes. Even in his previous accounts of events—such as his statement to police that he hit Moore because of a robbery attempt, and that Stokes then "tried to run out and I hit her too"—he made no claim that he acted against Stokes in self-defense. As no reasonable view of the evidence established a justification defense, defendant was not entitled to the charge (*see People v Grady*, 40 AD3d 1368, 1371 [2007], *lv denied* 9 NY3d 923 [2007]; *People v Siler*, 288 AD2d 625, 628 [2001], *lv denied* 97 NY2d 709 [2002]).

By failing to object, defendant did not preserve his claim that County Court improperly assumed the role of an advocate by questioning witnesses excessively during the trial (*see People v Charleston*, 56 NY2d 886, 887-888 [1982]). In any event, as the questioning was limited to clarification of confusing testimony and did not favor either party, we would not have found that defendant was deprived of a fair trial (*see People v Lupo*, 92 AD3d 1136, 1138 [2012]; *People v Lozada*, 35 AD3d 969, 970 [2006], *lv denied* 8 NY3d 947 [2007]). Finally, defendant claims that a recording of his telephone call to Stokes from jail should not have been admitted as it was improperly authenticated. Contrary to the People's claim, defendant preserved this argument with a sufficiently specific objection; nevertheless, it lacks merit. A Sheriff's Department employee testified that all outgoing inmate calls from the jail were recorded and that there was no way to

alter or tamper with the recordings. Little—the roommate who summoned 911—testified that she was familiar with Stokes' voice and recognized it on the recording, an inmate who assisted defendant in placing the call testified that he did so, and defendant himself admitted that he made the call and that the voices on the recording were those of Stokes and himself. Accordingly, the recording was properly authenticated (*see People v Galunas*, 107 AD3d 1034, 1034-1035 [2013]; *People v Heard*, 92 AD3d 1142, 1144-1145 [2012], *lv denied* 18 NY3d 994 [2012]; *People v Ebron*, 90 AD3d 1243, 1245 [2011], *lv denied* 19 NY3d 863 [2012]).

Peters, P.J., Stein and McCarthy, JJ., concur. Ordered that the judgment is affirmed.