People v Heimroth (2020 NY Slip Op 01523)





People v Heimroth


2020 NY Slip Op 01523


Decided on March 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 5, 2020

109074

[*1]The People of the State of New York, Respondent,
v
Jacob Heimroth, Appellant.

Calendar Date: January 13, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ.


Sandra M. Colatosti, Albany, for appellant.
Mary Pat Donnelly, District Attorney, Troy (Jacob B. Sher of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the Supreme Court (Ceresia, J.), rendered January 4, 2017 in Rensselaer County, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), burglary in the first degree (two counts) and grand larceny in the fourth degree.
In August 2014, defendant and a childhood acquaintance went to the victims' trailer and killed them. Victim 1 was struck multiple times by an aluminum bat and victim 2 was repeatedly hit with a two-by-four. In September 2014, defendant was charged by indictment with multiple crimes stemming from the deaths of victims 1 and 2. In July 2015, however, the indictment was dismissed on the basis that the evidence presented to the grand jury was not legally sufficient. The People were granted leave to re-present and an indictment in August 2015 followed. Prior to trial, defendant moved to dismiss the August 2015 indictment on the ground that his constitutional right to a speedy trial was violated. Supreme Court denied the motion. A jury trial was held, after which defendant was convicted of murder in the second degree (two counts), burglary in the first degree (two counts) and grand larceny in the fourth degree. Defendant's subsequent motion to set aside the verdict under CPL 330.30 (1) was denied. The court then sentenced defendant to a term of imprisonment. This appeal ensued. We affirm.
Defendant premises his legal sufficiency and weight of the evidence arguments on what he claims was a lack of evidence to corroborate the acquaintance's testimony that defendant participated in the crimes at issue. "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]; People v Fields, 160 AD3d 1116, 1117 [2018], lvs denied 31 NY3d 1116, 1120 [2018]; People v Furman, 152 AD3d 870, 871 [2018], lv denied 30 NY3d 1060 [2018]). "The corroborative evidence need only tend to connect the defendant to the crime; it need not establish all the elements of the offense" (People v Steinberg, 79 NY2d 673, 683 [1992] [internal quotation marks, brackets and citations omitted]; see People v Matthews, 101 AD3d 1363, 1365 [2012], lvs denied 20 NY3d 1101, 1104 [2013]; People v Duncan, 256 AD2d 1016, 1017 [1998], lv denied 93 NY2d 873 [1999]).
At trial, the acquaintance testified that, on the night in question, he and defendant first went to the house of one of defendant's friends. After they left, defendant and the acquaintance retrieved an aluminum bat at defendant's house and went to the river where they drank beers and consumed drugs. The acquaintance testified that he was not happy that victim 1, who was married to victim 2, was dating his aunt and so he and defendant walked to the victims' trailer to "pay him a visit." While en route, defendant picked up a two-by-four. They arrived at the trailer, and they each kicked down the door. After they entered, victim 1 was beaten with the aluminum bat and victim 2 was bludgeoned with the two-by-four. The acquaintance then rummaged through the victims' dresser in the bedroom for money but was unsuccessful. They eventually left the trailer, took victim 1's Ford Escape and drove away.
To corroborate the acquaintance's testimony, the People offered the testimony of defendant's friend, who stated that both defendant and the acquaintance came to his house late one night in August 2014. Another friend testified that on one morning in August 2014, defendant and the acquaintance appeared at her house in a Ford Escape. The victims' neighbor testified that she called 911 after having observed two people run around the victims' car before it was driven away.[FN1] One of the acquaintance's relatives testified that she drove defendant and the acquaintance in her car and that, after doing so, she found a blue fleece sweatshirt in the back seat where defendant had been sitting. The acquaintance's aunt testified that victim 1 kept extra clothes in his car and, on one instance, he retrieved a blue fleece sweatshirt from the car for her to wear. The People also offered photographs of the victims' door depicting two separate footprints and the testimony of a medical examiner attesting that victim 2's bruising and abrasions were caused by a rectangular object. In view of the foregoing, we conclude that the acquaintance's testimony was more than adequately corroborated (see People v Malak, 117 AD3d 1170, 1173-1174 [2014], lv denied 24 NY3d 1086 [2014]; People v Walton, 16 AD3d 903, 904 [2005], lv denied 5 NY3d 796 [2005]; People v Lawrence, 1 AD3d 625, 626-627 [2003], lv denied 1 NY3d 630 [2004]; People v Riddick, 246 AD2d 821, 822-823 [1998], lv denied 91 NY2d 944 [1998]).
Defendant asserts that almost 23 months passed from when he was initially indicted in September 2014 to when trial commenced in July 2016 and that, as a consequence, he was deprived of his constitutional right to a speedy trial. When assessing whether a criminal defendant's constitutional right to a speedy trial has been violated, "[t]he five factors to be considered are: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charges; (4) any extended period of pretrial incarceration; and (5) any impairment of [the] defendant's defense" (People v Romeo, 12 NY3d 51, 55 [2009], cert denied 558 US 817 [2009]; see People v Anderson, 114 AD3d 1083, 1084 [2014], lv denied 22 NY3d 1196 [2014]). The time period at issue is substantial and, in the absence of any justification, would be viewed as excessive (see People v Romeo, 12 NY3d at 56). Although defendant has been incarcerated for the entire period, the charges involved serious crimes (see People v Decker, 13 NY3d 12, 15 [2009]; People v Swan, 90 AD3d 1146, 1147 [2011]). Furthermore, defendant's cursory claim that the memory of witnesses has faded due to the passage of time is "too speculative to carry significant weight" when assessing the various factors (People v Chaplin, 134 AD3d 1148, 1150 [2015], lv denied 27 NY3d 1067 [2016]). The record also discloses that much of the delay was occasioned by various routine pretrial matters as opposed to prosecutorial inaction. Accordingly, we cannot say that defendant was deprived of his constitutional right to a speedy trial (see People v Williams, 163 AD3d 1283, 1285-1286 [2018], lv denied 32 NY3d 1069 [2018]; People v McNeal, 91 AD3d 1204, 1205 [2012], lv denied 18 NY3d 996 [2012]; People v Rogers, 8 AD3d 888, 889-890 [2004]; People v Rouse, 4 AD3d 553, 556 [2004], lv denied 2 NY3d 805 [2004]).
We reject defendant's assertion that Supreme Court erred in admitting photographs of the victims' deceased bodies. "[P]hotographs are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered" (People v Wood, 79 NY2d 958, 960 [1992] [internal quotation marks and citation omitted]). Despite the graphic nature of the photographs, they were relevant on the issue of intent and to show the locations of one of the victims' bodies, the severity of the inflicted injuries and the nature of the weapon used upon each victim (see People v Stevens, 76 NY2d 833, 836 [1990]; People v Stover, 178 AD3d 1138, 1144 [2019]; People v Powell, 115 AD3d 998, 1000 [2014], lv denied 23 NY3d 1024 [2014]). Given that the People did not admit the photographs for the sole purpose of "arousing the emotions of the jury and to prejudice defendant" (People v Greenfield, 167 AD3d 1060, 1063 [2018], lv denied 32 NY3d 1204 [2019] [internal quotation marks, brackets, ellipsis and citation omitted]) and taking into account the court's cautionary instructions to the jury (see People v Poulin, 159 AD3d 1049, 1051-1052 [2018], lv denied 32 NY3d 940 [2018]), we find that there was no abuse of discretion in the admission of the photographs (see People v Ford, 43 AD3d 571, 574 [2007], lv denied 9 NY3d 1033 [2008]; People v Mastropietro, 232 AD2d 725, 726 [1996], lv denied 89 NY2d 1038 [1997]; People v Webb, 184 AD2d 920, 920 [1992], lv denied 80 NY2d 935 [1992]).
We also find that Supreme Court provided a meaningful response to the jury's note and correctly denied defendant's request for a supplemental readback of a portion of the neighbor's cross-examination testimony.[FN2] During deliberations, the jury requested a readback of a specific portion of the neighbor's testimony that was limited to a particular time frame. In this regard, the jury asked to be read that part of the neighbor's testimony "when she hear[d] knocking and banging at the same time she saw a shadow in the window over the dresser in the bedroom." The court had the court reporter identify the relevant testimony, which was then read to the jury. Although no exception was initially noted to what was read, defense counsel thereafter requested that a portion of the neighbor's testimony on cross-examination be read. Defense counsel argued that the inference created by the jury's request and the read testimony was that there were two people in the trailer and that, on cross-examination, the neighbor was challenged as to her observations of two people. In our view, however, the court correctly found that the specific cross-examination testimony that defendant had asked to be read pertained to a different time frame than what the jury had requested and was not responsive to the jury's note. As such, under the circumstances of this case, the court's response was meaningful (see People v Grant, 127 AD3d 990, 991 [2015], lv denied 26 NY3d 968 [2015]; see generally People v Almodovar, 62 NY2d 126, 131-132 [1984]).
Turning to defendant's motion to set aside the verdict, one ground advanced by defendant was that the People committed a Brady violation. In particular, defendant argues that the People failed to disclose that an individual, who defendant claims had a familial relationship with the neighbor, had been prosecuted for a crime and that had this been timely disclosed, he could have cross-examined the neighbor about any benefit this individual received in exchange for her testimony. "A Brady violation occurs when the People fail to timely disclose all exculpatory and material evidence, including evidence that could be used to challenge the credibility of a crucial prosecution witness" (People v Johnson, 107 AD3d 1161, 1164 [2013] [internal quotation marks and citations omitted], lv denied 21 NY3d 1075 [2013]; see People v Hagaman, 139 AD3d 1183, 1185 [2016], lv denied 28 NY3d 930 [2016]). Defendant, however, failed to submit any proof substantiating his claim that the neighbor and the individual were related. Furthermore, as Supreme Court noted, even if a familial relationship existed, there was no evidence indicating that the neighbor was even aware of the charges against the individual. Accordingly, we find that there was no Brady violation.
We are also unpersuaded by defendant's other ground raised in his motion to set aside the verdict — that the People knowingly elicited false testimony from the neighbor. Defendant's argument centers on the neighbor's admission on cross-examination that her testimony on direct examination that she observed two people near the vehicle was false. In our view, however, defendant failed to establish that the People knew that the neighbor's testimony as to seeing two people was false when she testified on direct examination (see People v Lent, 204 AD2d 855, 855 [1994], lvs denied 84 NY2d 869, 873 [1994]). Even assuming that the People did knowingly elicit false testimony, "there is no reasonable possibility that the error contributed to the conviction" (People v Colon, 13 NY3d 343, 349 [2009] [internal quotation marks and citation omitted]).
Egan Jr., J.P., Lynch, Devine and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Although the neighbor subsequently admitted on cross-examination that her testimony that she observed two people was false, the jury was free "to accept some of her testimony while rejecting other portions of it" (People v Beliard, 101 AD3d 1236, 1239 [2012] [internal quotation marks, brackets and citation omitted], lv denied 20 NY3d 1096 [2013]; see People v Hodges, 66 AD3d 1228, 1231 [2009], lv denied 13 NY3d 939 [2010]; People v Bass, 277 AD2d 488, 497 [2000], lv denied 96 NY2d 780 [2001]).

Footnote 2: Contrary to the People's assertion, this argument is preserved given that defendant requested that a portion of the cross-examination testimony be read to the jury, and Supreme Court denied the request.