People v Hatch (2024 NY Slip Op 04229)

People v Hatch

2024 NY Slip Op 04229

Decided on August 15, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 15, 2024

113292
[*1]The People of the State of New York, Respondent,
v
Daniel R. Hatch, Appellant.

Calendar Date:April 30, 2024

Before:Clark, J.P., Aarons, Pritzker, Lynch and Ceresia, JJ.

Cambareri & Brenneck, Syracuse (Melissa K. Swartz of counsel), for appellant, and appellant pro se.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.

Aarons, J.
Appeal from a judgment of the Supreme Court (Donald F. Cerio Jr., J.), rendered July 26, 2021 in Madison County, upon a verdict convicting defendant of the crimes of predatory sexual assault, criminal sexual act in the first degree (two counts), criminal sexual act in the third degree (three counts), attempted criminal sexual act in the first degree, criminal sexual act in the second degree (two counts) and sexual abuse in the first degree (two counts).
Defendant, born in 1980, was charged by two superior court informations (hereinafter SCIs) and a subsequent indictment with various crimes stemming from allegations that, between June 2017 and January 2019, he had sexual contact with five victims who were incapable of consent either because they were less than 17 years old or physically helpless. The accusatory instruments were consolidated for trial, after which defendant was found guilty as charged. Supreme Court sentenced defendant to an aggregate prison term of 40 years to life with 20 years of postrelease supervision. Defendant appeals. We affirm.
Defendant contends that his convictions of attempted first-degree criminal sexual act (count 5) and first-degree sexual abuse (counts 8 and 9) are not supported by legally sufficient evidence, and the verdict is against the weight of the evidence. Because defendant's trial motion to dismiss was not specifically addressed to the errors raised on appeal, his legal sufficiency argument is not preserved for appellate review (see People v Johnson, 225 AD3d 927, 929 [3d Dept 2024]; People v Jones, 202 AD3d 1285, 1286 [3d Dept 2022]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt" (People v Lozano, 203 AD3d 1231, 1232 [3d Dept 2022] [internal quotation marks and citations omitted]).
Turning first to counts 3, 4, 6, 7 and 11, charging defendant with crimes based on the victims' ages, a person is guilty of criminal sexual act in the third degree when, "[b]eing [21] years old or more, he or she engages in oral sexual conduct . . . with a person less than [17] years old" (Penal Law § 130.40 [2] [counts 3, 4 and 11]). As it pertains to victim C, who was 14 years old during two incidents, a person is guilty of criminal sexual act in the second degree when, "being [18] years old or more, he or she engages in oral sexual conduct . . . with another person less than [15] years old" (Penal Law § 130.45 [1] [counts 6 and 7]). Relevant to these and most other charges, " '[o]ral sexual conduct' means conduct between persons consisting of contact between the mouth and the penis" (Penal Law § 130.00 [2] [a]).
Counts 2, 5, 8, 9 and 10 charged defendant with crimes premised on the victims' physical helplessness. " 'Physically helpless' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00[*2][7]). "[A] person who is sleeping is physically helpless for the purposes of consenting to sexual [activity], particularly where the sleep was drug and alcohol induced" (People v Dunham, 172 AD3d 1462, 1463 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 33 NY3d 1068 [2019]; see People v Manning, 81 AD3d 1181, 1181 [3d Dept 2011], lv denied 18 NY3d 959 [2012]; People v Sensourichanh, 290 AD2d 886, 886 [3d Dept 2002]).
With this in mind, a person is guilty of criminal sexual act in the first degree when "he or she engages in oral sexual conduct . . . with another person . . . [w]ho is incapable of consent by reason of being physically helpless" (Penal Law § 130.50 [2] [counts 2, 5 and 10]). With respect to count 5 only, defendant was charged with attempted first-degree criminal sexual act. "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00).
By contrast, a person is guilty of sexual abuse in the first degree "when he or she subjects another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2] [counts 8 and 9]). Relevant to these counts, " '[s]exual contact' means any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party. It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing" (Penal Law § 130.00 [3]).
Finally, as to count 1, a person is guilty of predatory sexual assault when he or she commits the crime of criminal sexual act in the first degree and "engaged in conduct constituting . . . criminal sexual act in the first degree . . . against one or more additional persons" (Penal Law § 130.95 [2]). To return a guilty verdict on this count, the People had to prove defendant's guilt on counts 2 and 10, charging him with oral sexual conduct while victim B and victim A, respectively, were incapable of consent due to physical helplessness.
Each of the victims and two other fact witnesses testified at trial, and they all described defendant's residence as a place where they could drink alcohol and smoke marihuana with no meaningful adult supervision. The jury reviewed video clips of defendant's January 2019 interview with an Oneida Police Department investigator, during which he discussed several of the alleged incidents. The interview produced a written statement executed by defendant, a redacted version of which was also received into evidence.
Victim A (counts 1, 10 and 11), born in 2002,[FN1] testified that, during the summer of 2017, he fell asleep on defendant's couch after a night of drinking. He woke up to find his pants around his ankles and defendant performing nonconsensual oral sex on him. He told defendant to stop, and defendant complied (see [*3]Penal Law §§ 130.50 [2] [count 10]; 130.95 [2] [count 1]). Victim A further testified that, on December 31, 2018, he attended a party at defendant's house, drinking alcohol supplied by defendant. At midnight, defendant, who was naked, pulled down victim A's pants and started performing nonconsensual oral sex on him. Victim A told defendant, "I'm not gay," and defendant replied, "I'm batting zero with you" (see Penal Law § 130.40 [2] [count 11]).
Victim B (counts 1, 2, 3 and 4), born in 2002, testified that, on July 4, 2017, he went to defendant's residence for the first time, drank alcohol supplied by defendant, and eventually fell asleep on defendant's couch. Victim B woke up and saw his pants lowered "a little bit" to his knees and defendant performing nonconsensual oral sex on him. Victim B explained he was "shocked," but he did not yell for defendant to stop and went back to sleep (see Penal Law § 130.40 [2] [count 3]). Victim B went on to testify that, in November or December 2017, while he was very inebriated, he performed oral sex on defendant (see Penal Law § 130.40 [2] [count 4]). Then, in January 2018, victim B was awoken by defendant performing oral sex on him again (see Penal Law §§ 130.50 [2] [count 2]; 130.95 [2] [count 1]).
Victim C (counts 5, 6 and 7), born in 2003, testified that he was at defendant's residence sometime between Halloween and Thanksgiving in 2017, and defendant asked, "Can I suck your d***?" Victim C was drinking alcohol and "gave in" after defendant asked again. Defendant performed oral sex on victim C for 5 to 10 minutes until victim C asked him to stop, and defendant complied (see Penal Law § 130.45 [1] [count 6]). A month or two later, victim C was at defendant's residence drinking alcohol supplied by defendant. According to victim C, defendant requested to perform oral sex on him again. Victim C hesitated, but defendant pulled victim C's pants down and performed oral sex on him for 5 to 10 minutes until he asked defendant to stop (see Penal Law § 130.45 [1] [count 7]). Victim C further testified that, sometime in the spring of 2018, while at defendant's residence and after smoking marihuana, he fell asleep on defendant's couch. Victim C was awakened by defendant pulling down victim C's pants. Victim C shoved defendant off of him, got up and left; defendant did not perform oral sex on victim C on that occasion (see Penal Law §§ 110.00, 130.50 [2] [count 5]).
Victim D (count 9), born in 2001, testified that between September and November 2018, he went to defendant's residence for the first time. Victim D drank about a quarter of a "tall boy" beer and fell asleep at defendant's house. When victim D woke up in the morning, he was shown a photo on a cell phone of defendant's erect penis on victim D's forehead (see Penal Law § 130.45 [2]). Victim D testified that he never consented to defendant's conduct or the photo. The photo was deleted, and victim D has not seen the picture since. Victim A corroborated this testimony[*4], stating that he saw defendant place his penis on victim D's forehead and take the photo.
Victim E (count 8), born in 2002, testified that on one occasion, he slept on defendant's couch. When victim E woke up, he opened his cell phone and saw a video in a group chat depicting defendant putting his penis on victim E's forehead (see Penal Law § 130.45 [2]). The video was deleted. A friend who was also there that night testified to witnessing defendant place his penis on victim E's forehead and confirmed the incident took place in November 2017.
Given that some witnesses gave conflicting accounts, a different verdict would not have been unreasonable had the jury chosen not to credit their testimony. Contrary to defendant's view, however, these discrepancies do not render their testimony inherently unbelievable or incredible as a matter of law (see People v Karnes, 223 AD3d 1119, 1122 [3d Dept 2024]; People v Dennis, 221 AD3d 1278, 1280 n 2 [3d Dept 2023], lv denied 40 NY3d 1091 [2024]).[FN2]
We reject defendant's contention that, because victim C woke up while his pants were being pulled down by defendant, the People failed to prove he attempted oral sexual conduct while victim C was physically helpless (count 5). Testimony established that victim C was asleep and therefore physically helpless at the time of the alleged conduct (compare People v Cecunjanin, 16 NY3d 488, 492 [2011]). The jury could infer defendant's intent by crediting victim C's testimony that defendant's head was near his groin (see People v Gilmore, 200 AD3d 1184, 1189 [3d Dept 2021], lv denied 38 NY3d 927 [2022]). Having started to disrobe victim C, defendant was "dangerously close" to completing the crime (People v Dennis, 221 AD3d at 1280 [internal quotation marks and citation omitted]), thus constituting an attempt.
Similarly unavailing is defendant's claim that there was insufficient evidence to satisfy the sexual gratification element of the two first-degree sexual abuse counts that alleged defendant touched his penis to the foreheads of victim D and victim E while they slept (counts 8 and 9). Testimony established that defendant's penis was erect when he placed it on victim D's forehead. Although there was no similar testimony as to the incident with 15-year-old victim E, an inference of sexual gratification "is clearly appropriate when a nonrelative causes intimate contact with a child" (People v Fuller, 50 AD3d 1171, 1175 [3d Dept 2008] [internal quotation marks, ellipsis and citations omitted], lv denied 11 NY3d 788 [2008]). In sum, "[v]iewing the evidence in a neutral light and according deference to the jury's credibility assessments, the verdict is supported by the weight of the evidence as to all of the charged crimes" (People v Rivera, 206 AD3d 1356, 1358 [3d Dept 2022] [internal quotations marks and citations omitted], affd 39 NY3d 1062 [2023], cert denied ___ US ___, 143 S Ct 2675 [2023]).[FN3]
Defendant's contention in his pro se brief that his statutory speedy trial [*5]right was violated is meritless. The People announced trial readiness on the crimes charged in the two original SCIs well within the statutory six-month time limit applicable to felonies (see CPL 30.30 [1] [a]). The crimes charged in the indictment were originally charged in a felony complaint filed November 30, 2019, and the statutory speedy trial clock began to run on that date for those counts (see People v Scaringe, 137 AD3d 1409, 1410 [3d Dept 2016], lv denied 28 NY3d 936 [2016]; see generally People v Lomax, 50 NY2d 351, 355-356 [1980]). Supreme Court appropriately found that, of the 332 days between November 30, 2019 and the October 27, 2020 filing of the People's certificate of readiness, 221 days were accounted for by the executive orders tolling time limits in connection with the COVID-19 pandemic (see People v Williams, 224 AD3d 998, 1002 [3d Dept 2024], lv denied 41 NY3d 1021 [2024]; see generally People v Sinistaj, 67 NY2d 236, 239 [1986]). The resulting difference of 111 days was within the statutory six-month period to certify readiness for trial.[FN4]
As to defendant's pro se constitutional speedy trial claim, the 29-month period between the filing of the original SCIs in January 2019 and commencement of trial in June 2021 "is substantial and, in the absence of any justification, would be viewed as excessive" (People v Heimroth, 181 AD3d 967, 970 [3d Dept 2020], lv denied 35 NY3d 1027 [2020]; see People v Romeo, 12 NY3d 51, 56 [2009], cert denied 558 US 817 [2009]). Although defendant's incarceration for that entire period weighs in his favor (see People v Anderson, 114 AD3d 1083, 1084 [3d Dept 2014], lv denied 22 NY3d 1196 [2014]), "the charges involved serious crimes" (People v Heimroth, 181 AD3d at 970). Furthermore, much of the delay can be attributed to protracted plea negotiations, extensive motion practice, the multi-month interruption in court operations occasioned by the COVID-19 pandemic, several pretrial hearings and appearances, and defendant's two changes of counsel. In the absence of any discernable prejudice to the defense, we find defendant's constitutional speedy trial rights were not violated (see People v Catalan, 204 AD3d 1240, 1242 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]; People v Anderson, 114 AD3d at 1084; see generally People v Regan, 39 NY3d 459, 464-465 [2023]; People v Wiggins, 31 NY3d 1, 9-10 [2018]).
Defendant also argues in his pro se brief that the People's various certificates of trial readiness were illusory given their failure to turn over body camera video from an interview with victim D conducted in January 2019 by the Oneida County Sheriff's Department. At a May 2021 appearance, defendant, speaking on his own behalf, brought to Supreme Court's attention that he had requested the body camera video in various demands and inquiries, but to no avail.[FN5] The prosecutor represented that the People possessed the body camera video and, in fact, had made it available to defendant, but agreed to check into [*6]the matter. On the eve of trial, the prosecutor corrected the record and stated that he had been mistaken, and the body camera video was destroyed by the Oneida County Sheriff's Department pursuant to their retention policy sometime before October 2020. As a result, the People never came into possession of the video. When Supreme Court asked defendant if he was satisfied with the People's answer, defendant responded, "I'm okay with that." In light of this concession, and "in the absence of a showing by . . . defendant that there is a reasonable possibility that the non-disclosure materially contributed to the result of the trial," defendant is not entitled to relief on this ground (CPL 245.80 [3]).
Defendant's contention that Supreme Court erred by denying his request for a voluntariness charge with respect to statements from his January 2019 custodial interrogation is meritless. "Such an instruction is required only if the evidence presents a genuine question of fact as to the voluntariness of the statement" (People v White, 27 AD3d 884, 886 [3d Dept 2006] [citations omitted], lv denied 7 NY3d 764 [2006]; see generally CPL 60.45). The evidence before the jury revealed that defendant brought himself to the police station where the investigator read defendant his Miranda rights, which rights he said he understood and voluntarily waived in an oral statement and executed waiver form. Despite being so advised, defendant never invoked his rights to remain silent or to counsel. Although the investigator testified at trial that he "bluff[ed]" during the interview to elicit responses, these minor deceptions were never accompanied by false promises, threats or other coercive tactics, and thus there was no factual basis to instruct the jury on the voluntariness of defendant's statement (see People v Hamms, 55 AD3d 1142, 1144 [3d Dept 2008], lv denied 11 NY3d 925 [2009]).[FN6]
Next, defendant's aggregate prison term of 40 years to life is substantial for a first-time felony offender, but his convictions reflect multiple incidents across multiple years affecting multiple teenage victims. Thus, Supreme Court ordered defendant's 20-year prison terms on counts 2 and 10 to run consecutively, but concurrently with consecutive prison terms of 25 years to life on count 1 and 15 years on count 5, with lesser concurrent terms on the remaining counts. The initial offer of a 10-year sentence was made before defendant was charged by indictment with additional crimes affecting more victims. Notwithstanding the disparity between the plea offer and sentence, nothing in the record indicates that defendant's sentence was in retaliation for declining the plea offer (see People v Planty, 155 AD3d 1130, 1135 [3d Dept 2017], lv denied 30 NY3d 1118 [2018]). Furthermore, during sentencing, defendant cast aspersions on the court and prosecutor, claimed one of the victims had "shed a tear while playing to the jury," and that the victims only came forward because the police investigator [*7]"dragged [them] into a situation . . . that they wanted nothing to do with." He added in conclusion, "Sorry. No remorse. My bad" (see People v Polanco, 13 AD3d 904, 906-907 [3d Dept 2004], lv denied 4 NY3d 802 [2005]). We also note that defendant has a 2003 misdemeanor conviction for endangering the welfare of a child (see Penal Law § 260.10 [1]), for which he received a sentence of probation. His probation was revoked upon a subsequent arrest, and he was resentenced in 2007 to six months of incarceration. We decline defendant's request to modify his sentence in the interest of justice.
Finally, we agree with the parties that count 10 on the uniform sentence and commitment form must be corrected from sexual abuse in the first degree to criminal sexual act in the first degree.
Defendant's remaining contentions, including those in his pro se brief, have been assessed and determined to be meritless.
Clark, J.P., Pritzker, Lynch and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed, and matter remitted to the Supreme Court for entry of an amended uniform sentence and commitment form.

Footnotes

Footnote 1: The parties stipulated to the birthdates of each victim.

Footnote 2: "Defendant's contention that he was denied a fair trial by improper prosecutorial comments during summation is unpreserved, as his counsel failed to make timely objections, and we decline to take corrective action in the interest of justice" (People v Planty, 155 AD3d 1130, 1133 [3d Dept 2017] [internal citation omitted], lv denied 30 NY3d 1118 [2018]).

Footnote 3: Defendant's challenge to the People's introduction at trial of certain video statements about uncharged victims and prior bad acts, along with his related challenge to Supreme Court's failure to give limiting instructions on that evidence, are unpreserved in the absence of a proper objection (see People v Gilmore, 200 AD3d at 1189; People v Flower, 173 AD3d 1449, 1455 [3d Dept 2019], lv denied 34 NY3d 931 [2019]), and, upon review of the record, we will not take corrective action in the interest of justice. To the extent defendant argues that counsel was ineffective for failing to preserve these issues, defendant has not demonstrated that the failures were not tactical decisions to avoid drawing the jury's attention to the statements (see People v Mansfield, 223 AD3d 1111, 1116 [3d Dept 2024]; People v Buchanan, 95 AD3d 1433, 1437 [3d Dept 2012], lv denied 22 NY3d 1043 [2013]).
Footnote 4: We further note that defendant executed a waiver of his constitutional and statutory speedy trial rights on August 14, 2020, in connection with ongoing plea negotiations.
Footnote 5: Although defendant was represented by counsel, the issue was originally raised in a confidential letter sent by defendant himself to Supreme Court asserting that the People had not turned over the body camera video and questioning the People's trial readiness. The letter was not part of the CPL 30.30 speedy trial motion submitted by counsel. Nevertheless, the court recognized that defendant "had some interest in addressing the matter of speedy trial," and invited him to speak on the issue on his own behalf at the May 19, 2021 appearance, without objection from the People. In the absence of an objection, the issue is preserved despite defendant's failure to raise it in a writing on notice to the People (see generally CPL 210.45 [1]; People v Jennings, 69 NY2d 103, 113 [1986]; People v Singleton, 42 NY2d 466, 470 [1977]).
Footnote 6: Defendant's related challenge to Supreme Court's denial of his motion to suppress his interview statements is likewise meritless, as the People proved defendant's statements were voluntary beyond a reasonable doubt (see People v Scippio, 144 AD3d 1184, 1185 [3d Dept 2016], lv denied 28 NY3d 1150 [2017]).