People v Luna (2022 NY Slip Op 03938)

People v Luna

2022 NY Slip Op 03938

Decided on June 16, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 16, 2022

111143
[*1]The People of the State of New York, Respondent,
v
Manuel Luna, Appellant.

Calendar Date:April 20, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Arthur G. Dunn, Troy, for appellant.
P. David Soares, District Attorney, Albany (Erin LaValley of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Breslin, J.) rendered May 2, 2017 in Albany County, upon a verdict convicting defendant of the crime of tampering with a witness in the third degree.
In September 2015, defendant was arrested and indicted for various felonies related to drug trafficking for which he faced a maximum sentence of 25 years to life in prison. Geraldo Torres, a codefendant for the drug trafficking conspiracy, was also arrested for his part in the scheme and, while awaiting trial, was incarcerated in the cell next door to defendant in the Albany County jail. Torres accepted a plea offer wherein he would plead guilty to conspiracy in the second degree and receive a sentence of 8&frac13; to 25 years in prison in satisfaction of the various crimes charged in exchange for his cooperation in the trials of his coconspirators, including defendant. Thereafter, in November 2015, defendant allegedly made a statement to Torres which Torres understood to be a threat of harm to himself or his family if he continued to cooperate in the People's case against defendant. Defendant was then charged by indictment with intimidating a victim or witness in the third degree and tampering with a witness in the third degree. Following a jury trial, defendant was convicted of tampering with a witness in the third degree, for which he was sentenced to a prison term of 1&frac13; to 4 years to run consecutively to any other sentence previously imposed. Defendant appeals.
Defendant contends that his conviction is not supported by legally sufficient evidence and is against the weight of the evidence. "A person is guilty of tampering with a witness in the third degree when, knowing that a person is about to be called as a witness in a criminal proceeding[,] . . . [h]e [or she] wrongfully compels or attempts to compel such person to absent himself [or herself] from, or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in him [or her] a fear that the actor will cause physical injury to such person or another person" (Penal Law § 215.11 [1]).
At trial, the People called Torres, who testified that he has been incarcerated at the jail in accordance with his guilty plea for conspiracy in the second degree and that the plea agreement required his cooperation in the People's case against his coconspirators, including defendant, in exchange for an agreed-upon prison sentence. Torres testified that when he told defendant that he had given law enforcement information regarding the drug trafficking crimes, defendant had replied that Torres had to "pay for this shit." Defendant told Torres that Torres was "worse than all of [the coconspirators], if I cannot get you[,] I am going to get one of your family members"; Torres averred that "going to get" meant "[k]illing" and that defendant appeared angry at that time. Torres reported that, even though defendant's threat scared him, he testified against defendant at defendant's [*2]trial on the drug trafficking charge. When asked whether he was receiving any benefit for testifying against defendant as to the present charges, Torres replied "[n]o, but I hope." He conceded that he had not reported defendant's threat against him to anyone in the jail and that he told the district attorney's office of that threat months before they began preparing him to testify at defendant's trial on the underlying drug charges. Torres affirmed that he had stopped attending church services at the jail as a result of defendant's threat in an attempt to "put some distance" between them. Torres testified that his present placement in the jail is in protective custody.
Another incarcerated individual testified that he had been incarcerated at the jail in November 2015 for a federal conspiracy charge, unrelated to the drug trafficking conspiracy involving defendant and Torres, and that defendant was incarcerated in the jail at that same time. The incarcerated individual stated that he interacted with defendant at church and in the courtyard of the jail and that he recalled having overheard a conversation wherein defendant was speaking with his coconspirators, questioning why they were taking a plea deal given that the People did not have any evidence other than what the coconspirators were telling them. The incarcerated individual also recalled a conversation between defendant and one coconspirator wherein he told the coconspirator that the People are "saying I brought a kilo of [c]ocaine to Torres, they didn't have that, I don't know why he saying yes, I don't see it anywhere in the discovery." The incarcerated individual asserted that, while in a church service at the jail, he heard defendant tell the coconspirators, including Torres, that they should "stop talking shit . . .[.] I can get to your families[,] so you better stop." On cross-examination, the incarcerated individual conceded that he had not yet been sentenced on his conspiracy plea such that his cooperation in the present matter could weigh into his sentence.
Turning first to legal sufficiency, viewing the foregoing "in the light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the [jury]" (People v Gilmore, 200 AD3d 1184, 1188-1189 [2021] [internal quotation marks, brackets and citations omitted], lvs denied 38 NY3d 926, 927 [2022]; see People v Lafountain, 200 AD3d 1211, 1212 [2021], lv denied 38 NY3d 951 [2022]). Specifically, the testimony at trial established — beyond a reasonable doubt — defendant's awareness that Torres, as well as his other coconspirators, were cooperating with the People in connection with defendant's case, and that defendant "attempt[ed] to compel" Torres not to testify against him in his criminal trial by "instilling in him a fear that [defendant] w[ould] cause physical injury" to himself or to his loved ones (Penal Law § [*3]215.11 [1]; see People v Lott, 217 AD2d 959, 959 [1995], lv denied 86 NY2d 844 [1995]). As to the weight of the evidence, a different verdict would not have been unreasonable had the jury found the testimony by Torres and the incarcerated individual to be incredible. However, deferring "to the jury's credibility determination and viewing the evidence in a neutral light, we find that the convictions [are] not against the weight of the evidence" (People v Oliveras, 203 AD3d 1233, 1238 [2022]; see People v Sumpter, 191 AD3d 1160, 1162-1163 [2021], lv denied 37 NY3d 968 [2021]).
Finally, although Supreme Court imposed the maximum allowable prison sentence, we decline defendant's invitation to reduce his sentence in the interest of justice (see People v Lyons, 200 AD3d 1222, 1226 [2021], lv denied 37 NY3d 1162 [2022]; People v Wager, 173 AD3d 1352, 1359 [2019], lv denied 34 NY3d 1020 [2019]).
Aarons, J.P., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.