People v Dennis (2023 NY Slip Op 06005)

People v Dennis

2023 NY Slip Op 06005

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

112636
[*1]The People of the State of New York, Respondent,
v
Ray J. Dennis, Appellant.

Calendar Date:October 10, 2023

Before:Garry, P.J., Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Aaron A. Louridas, Delmar, for appellant.
Matthew Van Houten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Tompkins County (Scott A. Miller, J.), rendered January 16, 2018, convicting defendant following a nonjury trial of the crimes of attempted rape in the first degree and endangering the welfare of a child.
In February 2017, defendant was charged by indictment with attempted rape in the first degree and endangering the welfare of a child. After a nonjury trial, defendant was convicted as charged and sentenced to a prison term of 10 years to be followed by 15 years of postrelease supervision for the conviction of attempted rape in the first degree and to a lesser concurrent term of incarceration for the endangering the welfare of a child conviction. Defendant appeals.
Defendant argues that his conviction for attempted rape in the first degree is not supported by legally sufficient evidence and is against the weight of the evidence because the evidence at trial did not establish that he was dangerously close to committing rape in the first degree and he did not intend to engage in forcible sexual intercourse with the victim. We disagree. "As relevant here, a conviction for attempted rape in the first degree requires proof that the defendant intended and came dangerously close to engaging in forcible sexual intercourse with another person" (People v Butkiewicz, 175 AD3d 792, 793 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 1076 [2019]; see Penal Law §§ 110.00, 130.35 [1]).[FN1]
The victim, who was 14 years old at the time of the incident, testified that shortly after her mother and two brothers left to go get cigarettes — an outing that would take between an hour and a half to two hours — defendant came into her bedroom. After grabbing her arms and pushing her, he asked to see her breasts. Defendant told the victim that he knew she had showed her brother her breasts and that the victim's brother showed her his penis, which interaction the victim denied. The victim testified that, after defendant repeatedly asked, she showed him her breasts and that, after doing so, he grabbed the bottom of her ankles and started pulling on them. The victim responded by kicking her legs and stated that after a while of pulling on her ankles, defendant grabbed the mid part of her calf and started pulling on her pants, causing her pants and underwear to come off. At this point, the victim thought defendant was trying to have sex with her. Defendant tried to pull the victim's legs down and open them. After the victim unsuccessfully attempted to leave her room, defendant shoved her and she ended up on the ground with defendant kneeling in front of her. According to the victim, while trying to forcefully open her legs again, defendant pulled his shorts down to his mid-thigh, exposing his penis. Defendant was able to get his body in between the victim's legs so that his stomach was between her kneecaps and his penis was a foot away from her vagina. The victim testified that she thought defendant's [*2]penis was erect at this moment but was not sure because she did not look at it closely as she was preoccupied with trying to get defendant off her. The victim attempted to defend herself by throwing a volleyball at defendant, squirming, using her hands to make contact with his head and yelling at him to stop and leave her alone. Defendant stated that he would leave her alone if she gave him a hug, which the victim did. The victim was then able to leave the room and defendant told her that "[t]his isn't how [he] wanted it to go anyway."
For his part, defendant testified regarding the incident. His testimony was very similar to that of the victim, with a few exceptions. Most notably, defendant testified that his intent was to see the victim naked, not to rape her. Defendant admitted to asking the victim to show him her breasts and went on to testify that he asked her to show him her breasts again because she had not shown him for long enough. Defendant testified that the victim, when trying to get up off the floor, pulled down defendant's loose-fitting shorts, under which he did not have underwear. Defendant testified that he left his shorts down because his focus was on trying to stop the victim from leaving the room. Defendant testified that after he grabbed the victim by the arm and shut the door, she was down on the ground again and started kicking defendant. According to defendant, he grabbed the victim's legs, originally to stop her from kicking him, but as her pants started to come down, defendant pulled them off because he wanted to see her naked. At this point, the victim was completely naked. Defendant testified that he tried to see the victim's vagina by lifting up her legs but something was blocking his view. It was then that defendant suddenly wondered what he was doing and told the victim he would stop if she gave him a hug. After the victim hugged him, defendant testified that he told the victim that that wasn't how he wanted it to go and asked the victim not to tell anyone. Defendant also stated that his penis was two to three feet away from the victim's vagina and that he did not pry open her legs to get between them. Defendant also testified that he thought the victim would be more cooperative in letting him see her naked but that it was never his intent to rape her. Defendant explained that his face was injured, either from the victim slapping him or throwing a volleyball at him.
"The foregoing — viewed in the light most favorable to the People — presented a valid line of reasoning and permissible inferences from which a rational [finder of fact] could conclude that defendant intended to commit rape and came dangerously close to doing so" (People v Butkiewicz, 175 AD3d at 795 [citations omitted]; see generally People v Luna, 206 AD3d 1250, 1252 [3d Dept 2022]). As to the weight of the evidence, "[w]hile there were certainly differences between the victim's and defendant's versions of the incident, their conflicting testimony presented [*3]a classic he-said-she-said credibility determination for the [finder of fact] to resolve" (People v Rivera, 206 AD3d 1356, 1358 [3d Dept 2022] [internal quotation marks and citations omitted], affd 39 NY3d 1062 [2023], cert denied ___ US ___, 143 S Ct 2675 [2023]).[FN2] In light of these differing accounts of the incident, "a different verdict would not have been unreasonable had the [finder of fact] credited defendant's version" of events (People v Gilmore, 200 AD3d 1184, 1189 [3d Dept 2021], lv denied 38 NY3d 927 [2022]; see People v Granger, 166 AD3d 1377, 1379 [3d Dept 2018]). "However, deferring to the [finder of fact's] credibility determination and viewing the evidence in a neutral light, we find that the conviction[ ] [is] not against the weight of the evidence" (People v Luna, 206 AD3d at 1253 [internal quotation marks and citations omitted]; see People v Velett, 205 AD3d 1143, 1145-1146 [3d Dept 2022], lv denied 39 NY3d 988 [2022]).
We turn now to defendant's contention that County Court erred when it denied his request to issue a missing witness charge relative to the victim's brother. "A missing witness charge allows a [factfinder] to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Martinez, 166 AD3d 1292, 1296 [3d Dept 2018] [internal quotation marks and citation omitted], lv denied 32 NY3d 1207 [2019]; accord People v Ferguson, 193 AD3d 1253, 1258 [3d Dept 2021], lv denied 37 NY3d 964 [2021]). "To establish the need for a missing witness charge, the proponent of the charge must demonstrate that (1) the witness's knowledge is material to the trial; (2) the witness is expected to give noncumulative testimony; (3) the witness is under the control of the party against whom the charge is sought, so that the witness would be expected to testify in that party's favor; and (4) the witness is available to that party" (People v Lorenz, 211 AD3d 1109, 1112 [3d Dept 2022], lv denied 39 NY3d 1112 [2023] [internal quotation marks and citations omitted]; see People v Decker, 218 AD3d 1026, 1042 [3d Dept 2023], lv denied ___ NY3d ___ [Oct. 31, 2023]).
During the charge conference, which occurred after defendant testified and after the close of proof, defendant requested a missing witness charge as to the victim's brother arguing that he "could have been produced to either affirm, rebut, deny or comment on whether or not he participated in the acts that formed [defendant's] intent. He's the child that [defendant] says he saw show his private parts to [the victim] a few days before [the incident], which gave him the idea that [the victim] would consent to all of this." There is no dispute that the brother was not present the day of the incident and did not witness any of the events that occurred, which is why the People contend that a missing witness charge for the brother was inappropriate. Although defendant argues that the brother's testimony [*4]about this unrelated event is relevant to defendant's intent on the day of the incident, this is so only because defendant testified that he believed the victim would show him her breasts based upon what occurred between the victim and the brother. Thus, it was defendant's testimony alone that purportedly made the brother a relevant witness to corroborate that this incident, which allegedly formed the basis of defendant's intent, did in fact occur. As such, it is only collaterally relevant to defendant's credibility (see People v Neil, 289 AD2d 611, 614 [3d Dept 2001], lv denied 97 NY2d 758 [2002]). Indeed, it is clear from the record that the People were seeking to establish that defendant's intent to attempt to rape the victim could be inferred from defendant's actions alone during the incident and the brother would not have been able to supply any material evidence relevant to this. As such, there is no reason why the People would call the brother as a witness and it is unclear from the record why defendant chose not to call him. "This set of circumstances begs the question of whether [the brother] was 'missing' because defendant[ ] did not call him" (Warner v Kain, 186 AD3d 1844, 1848 [3d Dept 2020]). Accordingly, County Court did not abuse its discretion in denying defendant's request for a missing witness charge (see generally People v Lyons, 81 NY2d 753, 754 [1992]; People v Shaffer, 223 AD2d 755, 756 [3d Dept 1996], lv denied 87 NY2d 1025 [1996]).
We are unpersuaded by defendant's additional argument that County Court violated CPL 380.50 (2) (f) by allowing the People to read the victim's statement at sentencing in the victim's absence. CPL 380.50 (2) provides the victim the right to speak at sentencing, specifically stating that, upon proper notice, when sentencing a defendant for a felony a court "shall accord the victim the right to make a statement with regard to any matter relevant to the question of sentence" (CPL 380.50 [2] [b] [emphasis added]). "CPL 380.50 (2) was enacted to elevate what had previously been a privilege to a right" (People v Warren, 100 AD3d 1399, 1402 [4th Dept 2012] [internal quotation marks, brackets, ellipsis and citation omitted]) and "requires the court to allow any victim (or a surrogate) to speak at sentencing" (People v Hemmings, 2 NY3d 1, 6 [2004] [emphasis added]). Although CPL 380.50 (2) (f) provides that "[i]f the victim does not appear to make a statement at the time of sentencing, the right to make a statement is waived," it does not explicitly preclude the People, or someone else, from reading a statement on the victim's behalf. In fact, CPL 380.50 (2) (a) (2) provides that, for purposes of CPL 380.50, a victim includes a family member if the victim is "unable or unwilling to express himself or herself before the court." Thus, given that the intent of the statute is to accord victims the right to be heard at sentencing and that the statute does not specifically permit or prohibit the prosecutor from [*5]reading a victim's statement, we do not find that, here, County Court abused its discretion by allowing the prosecutor to read the victim's statement (see generally People v Hemmings, 2 NY3d at 6-7; People v Hodgins, 202 AD3d 1377, 1382 [3d Dept 2022]; People v Warren, 100 AD3d at 1403).
Defendant asserts that he was deprived of the effective assistance of counsel based solely upon alleged pressure by counsel to forgo a jury trial. This assertion, however, involves matters outside the record. Thus, this argument is "unreviewable on appeal and [is] more properly the subject of a CPL article 440 motion" (People v Smith, 63 AD3d 1301, 1304 [3d Dept 2009], lv denied 13 NY3d 862 [2009]; see People v Curry, 210 AD3d 1203, 1204 [3d Dept 2022]). Finally, we decline defendant's invitation to modify his sentence in the interest of justice as we do not find it to be unduly harsh or excessive (see People v Kilgore, 218 AD3d 1054, 1058 [3d Dept 2023]; People v Njoku, 218 AD3d 1047, 1054 [3d Dept 2023]). Nor do we find any support in the record for defendant's unpreserved contention that County Court was punishing defendant for exercising his right to trial by imposing a sentence longer than that offered pretrial (see People v Hunter, 219 AD3d 975, 981 [3d Dept 2023]; People v Almenteros, 214 AD3d 1027, 1031 [3d Dept 2023], lv denied 40 NY3d 927 [2023]).
Garry, P.J., Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: On appeal, defendant only challenges the conviction for attempted rape in the first degree.

Footnote 2: To the extent defendant so argues, we are unpersuaded that any inconsistencies in the victim's account renders her testimony incredible as a matter of law (see People v Rivera, 206 AD3d at 1358; People v Starnes, 206 AD3d 1133, 1134 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]). Moreover, she was "thoroughly cross-examined and any aspect of [her] testimony that could have been perceived as inconsistent was fully explored and presented to the [factfinder, who] was entitled to credit [her] testimony" (People v Velett, 205 AD3d 1143, 1145 [3d Dept 2022] [internal quotation marks, ellipsis and citation omitted], lv denied 39 NY3d 988 [2022]; see People v Sweet, 200 AD3d 1315, 1318-1319 [3d Dept 2021], lv denied 38 NY3d 930 [2022]).