People v Henehan (2025 NY Slip Op 02972)

People v Henehan

2025 NY Slip Op 02972

Decided on May 15, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 15, 2025

CR-24-0494
[*1]The People of the State of New York, Respondent,
v
Joseph W. Henehan Jr., Appellant.

Calendar Date:March 28, 2025

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Richard L. Herzfeld, New York City, for appellant.
F. Paul Battisti, District Attorney, Binghamton (Joann Rose Parry of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered August 18, 2021, upon a verdict convicting defendant of the crime of attempted rape in the first degree.
In the fall of 2019, the Federal Bureau of Investigation, in conjunction with the State Police, organized and executed an undercover operation formulated to catch individuals seeking to engage in sexual activity with minors. As part of this operation, a special agent with the FBI (hereinafter the agent) posted a profile on Skout,[FN1] writing that she was a "[s]ingle taboo mom of a young daughter looking for sexual like-minded individuals interested in new experiences to have some fun." Defendant responded to the agent's profile and thereafter engaged with her in a series of text messages over several days, during which the agent told him that she had an eight-year-old daughter. The text conversations eventually culminated in an arranged meeting between defendant, the agent and her purported daughter at a house in Broome County. When defendant arrived at the address, the agent greeted him, whereupon he showed her a stuffed animal and stated that he had brought condoms. Upon entering the house, defendant was arrested.
Defendant was subsequently charged by indictment with attempted rape in the first degree. The People filed a Molineux application seeking to introduce at trial all of the text message conversations between the agent and defendant; in some of these texts, defendant referenced and described his prior sexual acts with several children. They also looked to introduce an audio recording between defendant and the agent during the meeting at the house. County Court permitted some of defendant's text messages and precluded others. Likewise, the court allowed the audio recording subject to certain redactions. Following a jury trial, defendant was convicted as charged and was thereafter sentenced to a prison term of 10 years, to be followed by 15 years of postrelease supervision. Defendant appeals.
Defendant initially asserts that his conviction is not supported by legally sufficient evidence, specifically arguing that the People did not prove that he harbored the requisite intent, nor that he came "dangerously near" to completing rape. "When assessing the legal sufficiency of a jury verdict, [this Court] view[s] the facts in the light most favorable to the People and examine[s] whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Dillon, 231 AD3d 1352, 1353 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Butkiewicz, 175 AD3d 792, 793 [3d Dept 2019], lv denied 34 NY3d 1076 [2019]). "[A] conviction for attempted rape in the first degree requires proof that the defendant intended and came dangerously close to engaging in" (People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024] [internal quotation marks [*2]and citations omitted]) sexual intercourse with another person who is less than 11 years old (see Penal Law former § 130.35 [3]).[FN2] "The defendant need not take the final step in completing the crime, but he or she must have engaged in conduct that came dangerously near commission of the completed crime" (People v Hiedeman, 189 AD3d 1902, 1904 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 1120 [2021]; see Penal Law § 110.00).
The People's witnesses at trial included the agent, an investigator with the State Police and a Rite Aid employee. The agent testified as to how the operation was conducted. Specifically, she described the contents of her Skout profile, including that she had intentionally utilized the acronym "YNNG," which is a known signal word to those with a sexual attraction toward children, and that defendant responded almost immediately. The agent then asked defendant, "[y]ou into young?" and defendant responded yes. The agent testified that defendant shortly thereafter requested to continue the conversation in a more private setting, and they began text messaging one another over a three-day period. During the text conversations, the agent clearly stated that the sexual encounter pertained to her daughter only, and not her. The agent suggested to defendant that he "bring her [daughter] a little stuffed animal or something" before engaging with her and told him that her daughter "loves unicorns." She also stated that she did not want defendant to have unprotected sex with her daughter and asked him to use condoms. The agent further testified that they eventually agreed to meet at her house and that defendant appeared on the date and time agreed upon. After conversing for a short while, defendant, without any hesitation, walked into the house and closed the door behind him. The State Police investigator, who was located in the basement of the home at the time of the meeting, testified that he saw defendant exit a bus and walk to the address; the agent met defendant outside, and approximately 10 minutes later they both entered the house, whereupon the investigator placed defendant under arrest. The investigator testified that at the time of defendant's arrest he possessed a backpack containing a box of condoms and a white bag containing a unicorn pillow. These items were subsequently entered into evidence at defendant's trial.
The People also presented copies of the text message conversations between the agent and defendant that took place between September 30, 2019 and October 2, 2019, pictures and a DVD consisting of an audio recording of the agent and defendant's conversation at the house on the day of defendant's arrest. In one text conversation, the agent inquired as to whether defendant wanted to take her daughter's virginity and defendant responded, "[t]hat'd be hot." In another text conversation, defendant inquired "[d]o you want me to bring condoms" and the agent responded, "if you are planning [*3]on goin all the way[,] def bring some." Defendant continued by texting "I'll pick them up! If it's possible[,] I wanna go all the way . . . and I'm okay with the sex with just her [and me]." The foregoing evidence, viewed in a light most favorable to the People, "presented a valid line of reasoning and permissible inferences from which a rational finder of fact could conclude that defendant intended to commit rape and came dangerously close to doing so" (People v Dennis, 221 AD3d 1278, 1280 [3d Dept 2023] [internal quotation marks, brackets and citations omitted], lv denied 40 NY3d 1091 [2024]; see People v Clyde, 18 NY3d 145, 155 [2011], cert denied 566 US 944 [2012]).
We next address defendant's challenge to County Court's Molineux ruling permitting the People to introduce the text message conversations, including several wherein defendant described sexual acts he had previously undertaken with several children. Defendant objected on the basis that the admission of these texts — i.e., evidence of uncharged crimes or prior bad acts — was pure propensity and would be extremely prejudicial. "In reviewing a Molineux ruling, [this Court] must first assess whether the People have identified some issue, other than mere criminal propensity, to which the evidence is relevant. . . . If the evidence is relevant to some issue other than propensity, we consider whether the probative value of the evidence outweighs its potential for prejudice" (People v Telfair, 41 NY3d 107, 114 [2023] [internal quotation marks, brackets and citations omitted]). "As a general rule, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative. A court may admit such evidence only after making the discretionary determination that the probative value of the evidence outweighs the potential for prejudice to the defendant" (People v Doane, 212 AD3d 875, 880-881 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1154 [2023]; see People v Gannon, 174 AD3d 1054, 1058-1059 [3d Dept 2019], lv denied 34 NY3d 980 [2019]). We agree with County Court that the texts offered by the People, some describing defendant's sexual acts with children, were material to several issues in the case, including that the texts were inextricably interwoven with the charged crime and were particularly relevant to the issue of intent, thus satisfying several Molineux exceptions (see People v Hodge, 224 AD3d 1082, 1088-1089 [3d Dept 2024], lv denied 41 NY3d 1002 [2024]; People v Doane, 212 AD3d at 881). Furthermore, County Court's ruling reflected a careful and thorough review of all text messages and a thoughtful balancing wherein the court refused to admit numerous text messages based on its finding that many [*4]of the texts were purely propensity and/or too prejudicial (see People v Deas, 236 AD3d 1105, 1109 [3d Dept 2025]; People v Gannon,174 AD3d at 1058-1059).
Next, we reject defendant's contention that he did not knowingly and voluntarily waive his right to be present at sidebar conferences (see CPL 260.20; People v Antommarchi, 80 NY2d 247, 250 [1992]). It is well settled that a criminal defendant has a statutory right to be present at all material stages of the trial, including ancillary matters such as questioning prospective jurors at sidebar regarding bias, hostility or predisposition (see People v Velasquez, 1 NY3d 44, 47 [2003]; People v Abdullah, 28 AD3d 940, 941 [3d Dept 2006], lv denied 7 NY3d 784 [2006]). However, such right may be voluntarily waived by a defendant or defendant's attorney, either expressly or impliedly (see People v Flinn, 22 NY3d 599, 601 [2014]; People v Malloy, 152 AD3d 968, 969-970 [3d Dept 2017], lv denied 30 NY3d 981 [2017]).
Before beginning jury selection, County Court engaged in the following colloquy with defendant: "[f]rom this point forward there's going to be occasions when your attorney comes to the bench to discuss various issues. You're welcome to come up some of the time, all of the time or none of the time. It's totally your prerogative from this point forward. Going forward if your attorney comes and you don't join him, I'm just going to assume that you elected not to participate in the conference. Okay[?]" (emphasis added). Defendant responded "Okay." When the court asked defendant if he had any questions, he responded "[n]o, sir." Consequently, defendant chose not to attend any sidebar conferences. Under the circumstances presented here, defendant implicitly waived his right to be present at sidebar conferences — by his conduct and the absence of any accompanying objections — and defendant was not deprived of his right to be present at every material stage of trial (see People v Flinn, 22 NY3d at 601; People v Malloy, 152 AD3d at 970; People v Beverly, 6 AD3d 874, 875 [3d Dept 2004], lv denied 3 NY3d 637 [2004]).
Finally, we are unpersuaded by defendant's assertions regarding his sentence.Initially, defendant argues that he was penalized for exercising his constitutional right to proceed to trial because he received a sentence that was harsher than what was offered during plea negotiations. However, "the mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof positive that defendant was punished for asserting his right to trial" (People v Decker, 218 AD3d 1026, 1045 [3d Dept 2023] [internal quotation marks, ellipses and citations omitted], lv denied 40 NY3d 1012 [2023]; see People v Santana, 179 AD3d 1299, 1303 [3d Dept 2020], lv denied 35 NY3d 973 [2020]). The record contains no support for the conclusion that the sentence was retaliatory rather than based upon relevant sentencing factors (see People v Luciano, 152 AD3d 989, 995[*5][3d Dept 2017], lv denied 30 NY3d 1020 [2017]; People v Major, 143 AD3d 1155, 1160 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]). We do not find the sentence to be unduly harsh or severe so as to warrant invoking our interest of justice jurisdiction, given the seriousness of defendant's offense and his reluctance to accept responsibility for his actions (see CPL 470.15 [6] [b]; People v White,231 AD3d 1429, 1433 [3d Dept 2024], lv denied 42 NY3d 1082 [2025]; People v McMillan, 220 AD3d 1119, 1122 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]).
Aarons, J.P., Pritzker, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Skout is a social networking application wherein users can create a profile and view other individuals' profiles who share a common interest and are located in geographical proximity to one another.

Footnote 2: Penal Law § 130.35 was amended, effective September 1, 2024, by replacing the term "sexual intercourse" with the term "vaginal sexual contact" (L 2023, ch 777, § 5).