People v Lerario (2026 NY Slip Op 01092)

People v Lerario

2026 NY Slip Op 01092

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

111789 CR-23-1737
[*1]The People of the State of New York, Respondent,
vStephen Lerario, Appellant.

Calendar Date:January 7, 2026

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for appellant, and appellant pro se.
G. Scott Walling, Special Prosecutor, Slingerlands, for respondent.

Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (Frank Milano, J.), rendered May 3, 2019 in Saratoga County, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the third degree and criminal possession of weapon in the fourth degree, and (2) by permission, from an order of the County Court of Saratoga County (Chad Brown, J.), entered August 28, 2023, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was convicted, after a jury trial, of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the third degree and criminal possession of a weapon in the fourth degree stemming from an April 2018 domestic incident during which defendant shot the victim in the face with a shotgun.[FN1] Defendant was thereafter sentenced by Supreme Court (Milano, J.), as a second felony offender, to prison terms of 25 years, to be followed by five years of postrelease supervision, for the attempted murder and first-degree assault convictions, a prison term of 3½ to 7 years for the criminal possession of a weapon in the third degree conviction and one year of incarceration for the criminal possession of a weapon in the fourth degree conviction, all to run concurrently. Defendant later moved to vacate his conviction pursuant to CPL 440.10, arguing that he was denied his constitutional right to the effective assistance of counsel. County Court (Brown, J.) denied his motion without a hearing. Defendant now appeals from the judgment of conviction and, by permission, the denial of his CPL 440.10 motion.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. However, "[d]efendant's general motion to dismiss at trial was not specifically directed at any of the errors now raised upon appeal; thus, his legal sufficiency claims are unpreserved for appellate review" (People v Baber, 182 AD3d 794, 795 [3d Dept 2020] [internal quotation marks, footnote and citations omitted], lv denied 35 NY3d 1064 [2020]). "Nevertheless, in the course of reviewing defendant's weight of the evidence challenge, this Court necessarily evaluates whether all elements of the charged crimes were proven beyond a reasonable doubt" (People v Ashe, 208 AD3d 1500, 1501 [3d Dept 2022] [citations omitted], lv denied 39 NY3d 961 [2022]). "In a weight of the evidence analysis, [this Court must] first determine whether, based upon all of the credible evidence, a different finding would have been unreasonable and, if not, we then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Alger, 206 AD3d 1049, 1050-1051 [3d Dept 2022] [internal quotation marks and [*2]citations omitted], lv denied 38 NY3d 1148 [2022]). When undertaking this analysis, "[we] must view the evidence in a neutral light and defer to the jury's credibility determinations" (People v Ashe, 208 AD3d at 1501).
As relevant here, "[a] person is guilty of attempted murder in the second degree when he or she acts with intent to cause the death of another person" (People v Pica-Torres, 230 AD3d 855, 856 [3d Dept 2024], lv denied 42 NY3d 1054 [2024], citing Penal Law §§ 110.00, 125.25 [1]). "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). "A person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person [possesses a dangerous or deadly weapon with the intent to use the same unlawfully against another] . . . and has been previously convicted of any crime" (Penal Law § 265.02 [1]). Finally, "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e [or she] possesses a . . . shotgun . . . and has been convicted of a felony or serious offense" (Penal Law § 265.01 [4]).[FN2]
The evidence at trial demonstrated that, on the night of the incident, defendant and the victim were the only two people at the victim's residence. After a verbal dispute ensued, defendant went into the bedroom and came back holding the victim's 12 gauge shotgun, which she had stored under the dresser in their bedroom. The victim testified that while she was crouched in between the counter and stove in the kitchen crying, defendant screamed at her and pointed the shotgun downward at the victim, right between her eyes. The victim grabbed the barrel of the shotgun and defendant backed away. The victim explained that everything then calmed down, the gun disappeared and the victim smoked a cigarette, but then the two began fighting again. The victim explained that she hit defendant, knocking off his glasses. The next thing she knew, the victim thought that defendant had punched her in the face. The victim felt "warmness" all over her face and knew that she was bleeding heavily. She covered her face with a towel, felt nauseous, and recalled vomiting repeatedly into a trash can. Neighbors testified that, at the time of the incident, several "bangs" were heard coming from the victim's residence. Additionally, law enforcement recovered the shotgun from the victim's residence, as well as shotgun casings, and testing revealed that defendant's fingerprints were on both items. Defendant then drove the victim to the hospital, where she underwent surgery. Ultimately, the victim lost her right eye.
Defendant's arguments on appeal focus on whether or not the People established that he had the requisite intent. To that end, a different verdict as to the attempted murder in the second degree and assault in the first degree [*3]convictions would not have been unreasonable had the jury found that defendant lacked the requisite intent given that the only eyewitness to the shooting was the victim, who admitted to having memory issues, the testimony of several police officers who indicated that defendant said the shooting was an accident and the evidence from multiple witnesses that defendant had been drinking on the night of the shooting. However, there was testimony from multiple neighbors who heard arguing and saw defendant acting erratically outside of the home around the time the shooting occurred. The victim also testified that she and defendant were arguing when defendant procured the shotgun and proceeded to point it, from close range, right between her eyes. There were no other individuals in the home that night and the victim was shot in the head. The jury had the opportunity to consider each witness' testimony, found the victim to be credible despite her acknowledged memory issues and did not credit defendant's defense of intoxication. Additionally, Supreme Court, upon the People's request, provided the jury with an expanded charge on intent and, at defendant's request, provided the jury with an intoxication charge. As such, the jury had the appropriate basis to understand their responsibility in determining whether defendant had the intent to commit the crimes charged and, viewing the evidence in a neutral light and deferring to their credibility determinations, the verdict is supported by the weight of the evidence (see People v Hall, 243 AD3d 1070, 1072 [3d Dept 2025]; People v Scott, 47 AD3d 1016, 1018-1019 [3d Dept 2008], lv denied 10 NY3d 870 [2008]).
We have reviewed defendant's contention, in his pro se brief, that statements he made at the emergency wing of the hospital prior to the administration of Miranda warnings should have been suppressed. We agree. A review of the video of the encounter demonstrates that defendant, who was standing or sitting with a wall behind him, was surrounded by three to four uniformed police officers. Although officers at the Huntley hearing testified that defendant's movements were not restricted, he was prevented from leaving the hospital to retrieve his cell phone and was told on multiple occasions to sit down if he stood up. Additionally, while the questions asked by the police officers may have started in a more investigatory fashion, as the encounter continued the questions became more accusatory in tone, including one officer asking defendant repeatedly if he shot the victim. "With the benefit of viewing the interaction between the police and defendant, and considering all the circumstances involved, we cannot say that a reasonable person would have felt free to leave" (People v Abdullah, 206 AD3d 1340, 1346 [3d Dept 2022], lv denied 39 NY3d 939 [2022]; see People v Burry, 52 AD3d 856, 859 [3d Dept 2008], lv dismissed 10 NY3d 956 [2008]). However, given the overwhelming proof of defendant's guilt and the fact that defendant [*4]did not make any explicitly incriminating statements during the video, "there is no reasonable possibility that the error might have contributed to defendant's conviction," thus this error is harmless beyond a reasonable doubt (People v Slivienski, 204 AD3d 1228, 1236 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; see People v Robinson, ___ NY3d ___, ___, 2025 NY Slip Op 05871, *4 [2025]; People v Dorvil, 234 AD3d 1106, 1113-1114 [3d Dept 2025], lv denied 44 NY3d 982 [2025]). Additionally, as to defendant's remaining arguments on direct appeal, his contentions regarding jury selection are unpreserved as he failed to object to any of the asserted errors (see generally People v Lancaster, 143 AD3d 1046, 1054 [3d Dept 2016], lv denied 28 NY3d 1147 [2017]; People v Mosher, 94 AD3d 1231, 1233 [3d Dept 2012], lv denied 19 NY3d 999 [2012]).
Finally, we turn to defendant's claim, raised in both his CPL article 440 motion and on direct appeal, that he was deprived of the effective assistance of counsel.[FN3] Defendant focuses his argument on counsel's asserted failure to present expert witness testimony at trial to explain issues of intoxication and ballistics evidence. Pursuant to CPL 440.10, "[a]t any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]). "To demonstrate the existence of questions of fact requiring a hearing, a defendant is obliged to show that the nonrecord facts sought to be established are material and would entitle him or her to relief, and a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence" (People v James, 215 AD3d 1176, 1178 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 935 [2023]). A court's denial of a defendant's motion to vacate a judgment of conviction without a hearing will be upheld absent an abuse of discretion (see People v Wright, 27 NY3d 516, 520 [2016]; People v Bellamy, 187 AD3d 1421, 1422 [3d Dept 2020], lv denied 36 NY3d 1049 [2021]). As relevant here, "the constitutional requirement of effective assistance of counsel is satisfied 'so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of representation, reveal that the attorney provided meaningful representation' " (People v Ramey, 123 AD3d 1290, 1290 [3d Dept 2014] [brackets omitted], lv denied 25 NY3d 953 [2015], quoting People v Baldi, 54 NY2d 137, 147 [1981]). "To prevail on an ineffective assistance claim, a defendant bears the burden of demonstrating that trial counsel deprived him or her of a fair trial by providing less than meaningful representation. A defendant cannot meet this burden unless [*5]he or she proves that no strategic or other legitimate explanations existed to justify counsel's perceived inadequacies" (People v Starnes, 206 AD3d 1133, 1142-1143 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 1153 [2022]).
A careful review of the record establishes that defendant received meaningful representation. "It is well settled that the failure to call a particular witness does not necessarily amount to ineffective assistance of counsel" and that "[t]his is particularly true where, as here, expert testimony was not required to prove the intoxication defense" (People v Muller, 57 AD3d 1113, 1114 [3d Dept 2008] [citations omitted], lv denied 12 NY3d 761 [2009]; see People v King, 124 AD3d 1064, 1067 [3d Dept 2015], lv denied 25 NY3d 1073 [2015]). As to defendant's intoxication defense, there was no evidence submitted to establish that defendant was in fact intoxicated and, therefore, an expert witness discussing the effects of intoxication would not have advanced the defense.[FN4] Although defendant's counsel elicited testimony from witnesses who smelled alcohol on defendant's breath, no one testified that they observed defendant consume any substances. As such, there was nothing presented to the jury to suggest that defendant consumed enough alcohol or other substances to render him intoxicated. Defendant, seemingly the only individual who knew what substances he consumed and how they may have affected him, elected not to testify in his own defense — a tactical decision. What is more, "defendant now offers little more than speculative assertions that an expert's testimony would have supported" his intoxication defense (People v Muller, 57 AD3d at 1114; compare People v Cassala, 130 AD3d 1252, 1255 [3d Dept 2015], lv denied 27 NY3d 994 [2016]). Indeed, he failed to illustrate to what exactly an expert witness would have testified. In that regard, "[d]epending on . . . the jury's familiarity with [alcohol], eliciting further details about [it] could have [actually] belied the claim of intoxication and, at the least, would have given the People the opportunity to present expert testimony to the contrary" (People v Muller, 57 AD3d at 1114-1115; see People v Martin, 207 AD3d 403, 403 [1st Dept 2022], lv denied 38 NY3d 1189 [2022]). All things considered, "counsel's decision[s] reflected an objectively reasonable and legitimate trial strategy under the circumstances" (People v Njoku, 218 AD3d 1047, 1052-1053 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1093 [2024]; see People v Cole, 217 AD3d 1185, 1186-1187 [3d Dept 2023]). Accordingly, defendant received meaningful representation and, given his failure to raise any nonrecord support entitling him to a hearing on his CPL 440.10 motion, County Court did not abuse its discretion in denying said motion without a hearing (see People v Cole, 217 AD3d at 1185-1188; People v White-Span, 182 AD3d 909, 916 [3d Dept 2020], [*6]lv denied 35 NY3d 1071 [2020]). To the extent not expressly addressed, defendant's remaining arguments have been considered and found to be without merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Defendant was also indicted for three counts of criminal contempt in the second degree. One of these counts was dismissed as a result of defendant's trial order of dismissal; defendant was acquitted of the remaining two counts at trial.

Footnote 2: Notably, defendant admitted to allegations set forth in a predicate statement which established his prior convictions, satisfying the final element of the latter two charges without the need to introduce evidence of his prior convictions at trial.

Footnote 3: In his pro se supplemental brief, defendant also argues that his counsel on the CPL 440.10 motion was ineffective "for failing to establish a factual predicate within [the] moving papers sufficient to trigger plenary review of the issues raised" therein. Although this Court recently held that a defendant is entitled to effective representation within the context of a CPL 440.10 motion (see People v Nelson, 243 AD3d 958, 962 [3d Dept 2025]), defendant's argument in this respect is unavailing. Defendant's CPL 440.10 counsel presented a rational argument, even attempting to contact defendant's trial counsel to inquire about his initial efforts, or lack thereof, to consult expert witnesses. Defendant further claims that his CPL 440.10 counsel was ineffective for failing to consult an expert to provide an affidavit discussing what expert testimony in support of his intoxication defense could have entailed. As discussed in more detail herein, this does not, alone, constitute ineffective assistance of counsel and, upon viewing the totality of the representation, defendant's CPL 440.10 counsel was not ineffective (see People v King, 124 AD3d 1064, 1067 [3d Dept 2015], lv denied 25 NY3d 1073 [2015]; People v Muller, 57 AD3d 1113, 1114 [3d Dept 2008], lv denied 12 NY3d 761 [2009]).

Footnote 4: Similarly, to the extent that defendant argues that a ballistics expert should have been called to explain the discrepancy in the victim's testimony — that defendant pointed the gun at her at a 45-degree angle — and the testimony of the state trooper — that the gun was held at a 96-degree angle when fired — he makes no effort to explain how this would have aided in his defense.